591 A.2d 1060

**Judith MARSHALL, Appellant,**

v.

**John MARSHALL.**

**Judith MARSHALL**

v.

**John MARSHALL, Appellant.**

Superior Court of Pennsylvania.

Argued January 8, 1991.

Filed April 26, 1991.

Reargument Denied July 2, 1991.

Joanne R. Wilder, Pittsburgh, for appellant (at 762) and appellee (at 934).

Mary K. McDonald, Pittsburgh, for appellant (at 934) and appellee (at 762).

Before TAMILIA, POPOVICH and JOHNSON, JJ.

TAMILIA, Judge:

The parties, John and Judy Marshall, take cross-appeals from the May 4, 1990 Order dismissing husband's exceptions and wife's cross-exceptions and finalizing the February 20, 1990 Order directing husband to pay $1,550 per month for the support of wife and one child.

The parties were married on December 27, 1969 and separated on October 8, 1988, when husband left the marital residence. There is no divorce action pending. Subsequent to the parties' separation, husband voluntarily paid $1,300 per month to wife and $100 per month to the parties' then 12–year old daughter. Husband also provided free long

distance telephone service through his employer. When husband ceased making the voluntary payments, wife instituted a support action on or about August 25, 1989. At the time of the hearing, both parties were employed full-time, wife as a business teacher with the Monroeville Business School and husband as a manager with Westinghouse Corporation and a commander in the Naval Reserves. Wife's net income was $1,000 per month and husband's net income was in excess of $3,800 per month. The hearing officer's recommendations were adopted by the court who entered the February 20, 1990 temporary Order of support. The parties' exceptions to this Order were dismissed and the Order became final on May 4, 1990 and is the subject of this appeal.

Wife avers three errors: 1) ordering a support amount inconsistent with the reasonable needs of wife and daughter; 2) failing to consider husband's financial ability to provide more support than ordered, and 3) failing to consider husband makes no direct expenditures for the child.

Husband argues the court abused its discretion 1) by entering an Order in excess of the guidelines where wife did not meet her burden of proof; 2) by basing its deviation from the guidelines on wife's alleged reasonable expenses and 3) by basing its Order on husband's ability to accumulate savings.

 Our standard of review for awards of child support and spousal support is abuse of discretion. *See Lesko v. Lesko,* 392 Pa.Super. 240, 572 A.2d 780 (1990); *Goodman v. Goodman,* 375 Pa.Super. 504, 544 A.2d 1033 (1988). Spousal support assures a reasonable living allowance to the party requiring support. *Laughlin v. Laughlin,* 372 Pa.Super. 24, 538 A.2d 927 (1988). The Order of support must be fair and not confiscatory and must allow for the reasonable living expenses of the payor. *Costello v. LeNoir,* 462 Pa. 36, 337 A.2d 866 (1975); *Commonwealth v. Vogelsong,* 311 Pa.Super. 507, 457 A.2d 1297 (1983). Our careful review of the record reveals there was no abuse of discretion by the trial court.

■ In determining the amount of support to be paid by husband, the court considered the reasonable needs and expenses of all parties concerned. Wife's budget indicated a need for $3,322.02 a month. At the hearing, wife offered testimony as to her household expenses, including needed home repairs, the daughter's educational expenses and the wife's and daughter's entertainment allowance. Wife testified her father, who had purchased most of daughter Meghan's clothing, had recently passed away. Wife has a Bachelor of Science degree in education and went back to teaching part-time in 1986 after a lengthy hiatus during which time she was a housewife and mother. Husband testified as to his income from Westinghouse and the Naval Reserve as well as his household and entertainment expenses, medical bills and savings.

Applying the guidelines with wife's net at $1,000 and husband's net of $3,820, the court arrived at the amount of $1,212. Based on the reasonable needs and living standard of the parties, the court exceeded the guidelines and entered an Order for $1,550 per month, or $338 more than suggested by the guidelines. The award is not confiscatory and the record reveals special needs of the parties' child related to her age and the parties' standard of living which had been met previously such as cello and dance lessons and swimming and racquet club memberships. The comments to the guidelines under the section entitled "Allowable Deviations" provide that a court's failure to deviate from the guidelines when the parties' special needs and special circumstances dictate otherwise would constitute a misapplication of the guidelines. Pa.R.C.P. 1910.16-1. Explanatory Comment—1989. B.3. The facts here warrant a deviation favoring the payee spouse.

Despite the statistical verification of the guidelines by studies, the key ingredients for payment of support are the timeless principles established by experience and formalized in case law. They are the needs of the child and/or spouse and the ability of the obligor to pay. Net income has always been the criterion upon which ability to pay has

founded. The guidelines appear to be an attempt to formalize these concepts, as was *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984).

■ Net income, however, is not calculated in a vacuum. While the guidelines and the statute require net income to be the base upon which ability to pay is calculated, an individual evaluation of the income and proper deductions from gross income must be made to establish net income for support purposes. *See* Pa.R.C.P. 1910.16–5(b).

The statute and guidelines provide two points upon which rest the calculation of support, whether by guidelines or the formula. These are needs of the child or spouse and ability to pay. No two-legged stool can stand and, therefore, the third leg of a viable system must be consideration of the characteristics of the individual family which would otherwise make the guidelines unworkable. The enabling statute provided for this and, as mandated, is incorporated in the guidelines. By statute, 23 Pa.C.S.A. § 4322(b), application of the guidelines is subject to a rebuttable presumption permitting deviation from the guidelines where evidence, which would cause an injustice or make the guideline amount inappropriate, is presented. Deviations of ten per cent need not be explained by the trial judge or hearing officer under Pa.R.C.P. 1910.16–4, otherwise there must be a specific finding on the record or in writing that application of the guidelines would be unjust or inappropriate.

Wife alleges the court erred in failing to make an Order consistent with the reasonable needs of herself and child. In her brief, she alleges the court failed to consider *Melzer* in making this disposition. Appellee husband responds that during trial wife failed to request a *Melzer* analysis, and further, *Melzer* applies to child support only. Even if *Melzer* applies, husband maintains the guidelines are not incompatible with *Melzer* and are, in fact, a natural development of *Melzer*. This brings us to the point where we are required to consider whether *Melzer* must be applied separately or in conjunction with the guidelines or has been repealed by the statutory provisions, 23 Pa.C.S.A. § 4322,

and whether the *guidelines* supersede and, in effect, nullify *Melzer*. These questions present the forum for an interesting discussion on the power of the legislation to nullify case law and the weight to be given guidelines promulgated by legislatively created commissions, as is the case with the Sentencing Commission or rules promulgated by committees created by the Supreme Court. Fortunately, we have had considerable experience with guidelines in the criminal context with the implementation of the Sentencing Guidelines. Certain clear principles emanate from these considerations.

To begin with, guidelines do not have the force of law and are *not* mandatory impositions on judicial discretion. Judicial discretion was not and cannot be abrogated by guidelines although it can, in specific instances, be restricted by statutory provisions such as mandatory sentences. The statute which created the guidelines provides a procedural means for formalizing long standing principles for determining family support and, in effect, attempts to standardize the amount of support provided in similar situations, which is precisely what the sentencing guidelines attempt to do in criminal sentences. In a sentencing case, if the guidelines are ignored or if they are misapplied, the case may be remanded for resentencing. However, and this is crucial, if the guidelines were not specifically referred to, yet the trial court reviewed the record and all matters which are relevant to sentencing under the Sentencing Code, particularly the presentence investigation, the sentence will stand unless it is illegal because it is outside the sentence imposable by legislation. The discretion of the trial court may not be restricted simply because of the existence of guidelines. *See Commonwealth v. Devers*, 519 Pa. 88, 546 A.2d 12 (1988).

Turning to the support guidelines, the Domestic Relations Committee recognized the limitations of guidelines by stating:

> *The support guidelines are a starting point only.* They must be applied taking into consideration the special

needs and obligations of the parties. The hearing officer, permanent hearing officer or the court must consider all relevant factors, including the following:

(1) unusual needs and unusual fixed obligations;

(2) other support obligations of the parties;

(3) other income in the household;

(4) ages of the children;

(5) assets of the parties;

(6) medical expenses not covered by insurance;

(7) standard of living of the parties and their children; and

(8) *other relevant and appropriate factors.*

Pa.R.C.P. 1910.16–5(a) (emphasis added).

The check list, which is not exclusive, details those factors which *always* have been the underlying considerations for calculating a support Order. Similarly, Rule 1910.-16–5(b) provides the basis upon which the calculation of monthly net income is based. Again, nothing new is presented here that has not long been established by case law. The belief by some that the guidelines supersede prior case law, including *Melzer*, is untenable. To do so, they must be *mandatory* and although admittedly they have been constructed in a fashion to make their application almost automatic, the concept of *mandatory guidelines* is oxymoronic as the guidelines themselves provide *they are a starting point.* As they are constructed, discretion remains in weighing the evidence presented and making determinations as to when considerations outside the guidelines must apply. The theoretical base for the guidelines is the Income Shares Model developed by the Child Support Guidelines Project of the National Center for State Courts. (*See* Explanatory Comment 1989 Rule 1910.16–1.) That model is predicated on the concept that the child should receive the same proportion of parental income that he or she would have received if the parents lived together. Even stating the theory brings to mind the difficulty of applying guidelines when you start with a single parent family (multiple fathers), working and non-working parents

or multiple family relationships occasioned by divorce and remarriage. Since the model *does not* fit every situation faced by a domestic relations office, it is futile to attempt to impose guidelines in those cases, not to mention creating practically an automatic ground for review. Very few families have the distributable resources after separation that are jointly available to them when together. Attempting to provide the child with the same proportion of income after separation as he would have received before separation is workable only if the consequent increases in expenditures and decrease in *amounts* available for support are taken into consideration, rather than relying only on net income. An overriding principle, regardless of guideline provisions, is that support Orders may not be confiscatory which would frequently be the case if judicial discretion to go outside the guidelines was not permitted.

The guidelines acknowledge that in some instances they do not apply, particularly where the joint spousal income amount is more than $8,000 (Pa.R.C.P. 1910.16–5(d)).[1] These cases require the support to be calculated by the formula provided by Rule 1910.16–3, Support Guidelines. Formula. Either the formula *or* the guidelines provided by the rules may be used to calculate support. Since the guidelines have provided alternate means of establishing a support Order, does this mean that no other method is available? As discussed above, the guidelines draw their validity from long-established principles of support law. The guidelines are a starting point and do not negate the discretion of the trial judge in their interpretation and application of the guidelines. Neither the trial court nor this Court can ignore the guidelines. However, if a trial judge or hearing officer, with full knowledge of the guidelines, applies case law and properly weighs the applicable considerations to determine the needs of the child and/or spouse, the ability of the obligor to pay considering calcula-

1. There are also instances where the guidelines apply at the upper limit of $8,000 but the support grids do not. *See* examples in Pa. R.C.P. 1910.16–5(d).

tion of net income and related variables which allowably reduce net income *or* increase need, then failure to use the guidelines or guideline formula will not be a basis for reversal.

In that context, while legislation extended support considerations to statewide guidelines, nothing in the legislation or the guidelines leads to the conclusion that *Melzer* was nullified, or judicial discretion was lessened. The judge has not been reduced to a rubber stamp nor have the guidelines been elevated to the point that they are mandatory. It is not inconceivable that in the foreseeable *near* future the guidelines will be inserted into a statewide computer system and that imposition of the guideline amounts will occur with the flick of a finger on a computer keyboard. With full recognition of the overwhelming burden on domestic relations offices and staff and on hearing officers and judges and the need to expedite proceedings, guidelines should be the means of facilitating the proceeding and not the end in themselves. Under these circumstances, the routine case will be relegated to automatic disposition with true judicial review being limited to those cases where influence and extensive assets are involved. Thus it becomes clear that if a guideline is misapplied, on review the matter will be remanded for reconsideration.

Secondly, if a reasonable support Order is decreed using the *Melzer* formula as opposed to the guidelines, it will be affirmed. The mandatory application of *Melzer* is no more required than the application of the guidelines but both must meet the test of reasonableness. To address the specific issue in this case as to the *Melzer* formula, as acknowledged by husband, the use of *Melzer* would not bring about a substantially different result. We, therefore, cannot say that failure to apply *Melzer* was error. As this Court said in *Coffey v. Coffey*, 394 Pa.Super. 194, 575 A.2d 587 (1990):

> Finally, as appellant points out, application of neither the formula in *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984), nor the Montgomery County Child Support

Guidelines is evident from the undifferentiated order. This omission alone would be sufficient for reversal. *Id.*, 394 Pa.Superior Ct. at 203, 575 A.2d at 591, citing *Shutter v. Reilly*, 372 Pa.Super. 251, 539 A.2d 424 (1988). In *Shutter*, this Court held the *Melzer* formula must be applied in conjunction with the guidelines. In interpreting *Melzer*, we have adhered to a middle course in that the Supreme Court has *eschewed a strict mechanical formula and endorsed a flexible approach in these areas. Melzer*, 505 Pa. at 477–78, 480 A.2d at 999 (Flaherty and Hutchinson, JJ., concurring). While concurring and dissenting in *Shutter*, the author of this Opinion would not object to a guideline determination resulting in a final Order that did not conflict with a *Melzer* Order.

We cannot nullify the line of cases which have held that the *Melzer* formula is the underlying basis upon which a court Order must be founded, *DeWalt v. DeWalt*, 365 Pa.Super. 280, 529 A.2d 508 (1987), and that the calculation of that formula must appear of record. *Ryan v. DeLong*, 371 Pa.Super. 248, 538 A.2d 1 (1987); *Marshall v. Ross*, 373 Pa.Super. 235, 540 A.2d 954 (1988). These cases focus on the fact that guidelines, whether the ones adopted here or the ones based on a cost sharing approach, do not rely on a precise specification of the minimal amount necessary to support the child, but instead, set an idealized figure based on the income of the parents. *See* O'Donnell, Smith and Smith: "No Magic Formula for Determining Child Support Payments of the Non–Custodial Parent," 18 Will.L.Rev. 356.67 (1982).

 Since this Court, as seen above, takes divergent approaches in this matter, it is necessary to view the matter so as to accommodate both views. This is accomplished by finding that neither *Melzer* nor the guidelines can be ignored. When the guidelines are utilized, objection is made and it is factually established they fail to produce a result which is within reasonable range of what *Melzer* would have produced, then the guidelines will not prevail. If *Melzer* is properly utilized, it is unlikely that the guidelines

could be of greater validity as being less specific and detailed. If the guidelines are used and no attempt is made to weigh the result against *Melzer* at trial or upon review, then it is presumed the issue is waived and the guideline amount will be tested against the internal standard or the formula approved by the guidelines. This comports with the ultimate resolution of the Supreme Court and this Court in application of sentencing guidelines against the Sentencing Code, case law and judicial discretion. *Melzer* is not to be mechanically applied nor is it superseded by the support guidelines. Rather, it becomes a standard against which the guideline application in a particular case can be tested. This does not mean that the court must run a *Melzer* formula *and* a guideline application in every case. Rather, it means the court may apply the guidelines, but if one of the parties proposes a *Melzer* calculation that seriously conflicts with the guidelines, the court must be able to explain the difference. *Melzer* and the guidelines remain viable. *See Lesko, supra.* It also means that if the court utilized neither the guidelines nor the *Melzer* formula, and the resulting support Order does not come within a reasonable degree of conformity with a *Melzer* calculation, it will be reversed and remanded.

In *Racciato v. Racciato,* 393 Pa.Super. 307, 574 A.2d 625 (1990), this Court (Tamilia, J., dissenting) reversed and remanded because the trial court did not calculate the *Melzer* formula on the record. This author dissented because the trial court, in his memorandum, established that the *Melzer* formula need not be mechanically applied where the court believes a party is guilty of deception. *See Olson v. Olson,* 384 Pa.Super. 224, 558 A.2d 93 (1989). While recognizing the support guidelines, which were not applied in that case, the majority in *Racciato* suggested that the trial court, upon remand, should harmonize these guidelines (Pa.R.C.P. 1910.16–1 *et seq.*) with *Melzer* to create an appropriate award. In our review, we have found no case which holds unequivocally that *Melzer* is superseded by the guidelines or that *Melzer* may be ignored.

It is our conclusion, therefore, that the court could apply its discretion in its application of the guidelines, and since the result would not be significantly different from that which would have been achieved by applying the *Melzer* formula, the award must stand.

■ The fact that husband may have the financial wherewithal to pay more support than the court ordered he pay does not mean he is legally obligated to do so. The function of the court in a support proceeding is not to punish the husband but to fix an amount which is reasonable and proper for comfortable support and maintenance of the spouse in need. *Lutz v. Lutz*, 298 Pa.Super. 473, 444 A.2d 1281 (1982). This Court finds the court did not penalize husband for his ability to save but rather noted and properly considered the savings as part of obligor's entire financial picture. In setting an award of $1,550, the court properly balanced the financial needs of the parties as well as their financial capacities. As quoted in the trial court's Opinion at pages 5 and 6:

A party will not be rewarded for making unnecessary expenditures for his or her own benefit by having his or her support obligation reduced. Neither will a party be penalized for living frugally by receiving less support. In most cases, the parties' living expenses are not relevant in determining that party's support obligations because a support obligation is not based upon the amount of money the parties are actually spending on themselves and their children. Rather, as the statute requires, the obligation is based upon the reasonable needs of a dependent spouse or child and the reasonable ability of the obligor to pay.

For example, in setting the amount of a child support obligation, it should be of no concern to the court that one obligor chooses to live in a one-room apartment and rely solely on public transportation and that another obligor, making the same salary chooses to live in a $600 per month five-room apartment and drive a new car. Both are obligated to give priority to the needs of their chil-

dren. What they choose to do with their remaining income is not relevant to a support claim.

Pa.R.C.P. 1910.16–1, Explanatory Comment 1989, B. 1.

 Wife also alleges the court erred by failing to consider the lack of any direct expenditures by husband for the parties' child when the guidelines specifically contemplate some direct expenditures by the obligor. This argument is without merit. The direct contributions of non-custodial parents contemplated by the guidelines are during the times the non-custodial parent has "contact, including vacation time, with his or her children," and that is when it is anticipated that "he or she makes direct expenditures on behalf of the children." (Slip Op., Baldwin, J., 7/2/90, p. 6.)

For the reasons set forth herein we find there to have been no abuse of discretion by the trial court and that its award of $1,550 per month spousal and child support to be appropriate under the circumstances.

Order affirmed.

POPOVICH and JOHNSON, JJ., concur in the result.