538 A.2d 1

**Sherry L. RYAN**

v.

**Kenneth E. DeLONG, Appellant.**

Superior Court of Pennsylvania.

Submitted June 10, 1987.

Filed Nov. 9, 1987.

Ambrose R. Campana, Williamsport, for appellant.

Barbara A. Reed, Assistant District Attorney, Middleburg, for appellee.

Before CIRILLO, President Judge, and OLSZEWSKI and HESTER, JJ.

CIRILLO, President Judge:

This is an appeal from an order modifying an award of child support. We vacate and remand.

■■■■■■■

Appellant Kenneth DeLong and appellee Sherry Ryan are the unmarried parents of Robbie Royer, who was born on December 18, 1980. Various custody petitions and orders have been filed over the years on behalf of the child. This dispute concerns support rather than custody.

The support order appealed from requires the father to pay $55.00 per week for the support of his child. This same order vacated an order of August 1981 which required the appellant to pay $20.00 per week in child support. The trial court derived the $55.00 figure by applying the Snyder County support guidelines. The court stated that appellant had presented no testimony which required it to deviate from the guidelines.

Appellant presents two issues for our review: "(1) Did the lower court follow the guidelines recently enunciated in *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984)? [and] (2) Did the lower court err in refusing to follow the rule of comity?" [1]

Appellant claims that the support order at issue violates the guidelines enunciated in *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984). This court has recently had occasion to summarize the appellate scope of review in a child support case. In *DeWalt v. DeWalt*, 365 Pa.Super. 280, 529 A.2d 508 (1987), we stated:

On appeal, a child support order will not be disturbed unless the trial court committed an abuse of discretion. *Kopp v. Turley*, 359 Pa.Super. 106, 109, 518 A.2d 588, 590 (1986). An abuse of discretion is more than an error of judgment. It must be a misapplication of the law or an unreasonable exercise of judgment. *Id.*, 359 Pa.Superior Ct. at 109, 518 A.2d at 590.

\*  \*  \*  \*  \*  \*

In order to calculate the support obligation of each parent, the court must first determine the reasonable

---

**1.** Our disposition of this case precludes the need to address appellant's second issue. Nonetheless, we note that appellant has not provided an adequate legal foundation upon which to base his argument of "judicial comity."

needs of the children. *Reitmeyer v. Reitmeyer,* 355 Pa.Super. 318, 324–325, 513 A.2d 448, 452 (1986). Reasonable expenses are not limited to the bare necessities. A child is entitled to a reasonable standard of living based upon the social station, fortune and financial achievements of their parents. *Commonwealth ex rel. Stump v. Church,* 333 Pa.Super. 166, 172, 481 A.2d 1358, 1361 (1984).

The court must next determine, the respective abilities of the parents to support their children. To arrive at this amount, the court must make an allowance for the reasonable living expenses of each parent. The court must then calculate the parent's net income or earning capacity if that figure differs from actual income. *Lyday* [360 Pa.Super. 16] at 21, 519 A.2d [967] at 970 [1986]. The trial court must consider every aspect of a parent's financial ability to pay support. The actual and potential cash flow from his property interests, financial resources, stock holdings and other investments should all be considered. *Id.*

In *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984), a plurality of our Supreme Court, per Justice Larsen, established guidelines for the calculation of child support awards. *Id.,* 505 Pa. at 472–75, 480 A.2d at 996. Justice Larsen's formula provides:

A = amount available to parent A;

B = amount available to parent B

$$\frac{A}{A + B} \times \text{support needs} = \frac{\text{total support}}{\text{obligation of A}} - \frac{\text{in kind}}{\text{contribution}} = \frac{\text{actual support}}{\text{obligation of A}}$$

$$\frac{B}{A + B} \times \text{support needs} = \frac{\text{total support}}{\text{obligation of B}} - \frac{\text{in kind}}{\text{contribution}} = \frac{\text{actual support}}{\text{obligation of B}}$$

However, a majority of the Court eschewed strict mechanical formulas and endorsed a flexible approach in these cases. *Id.,* 505 Pa. at 477–78, 480 A.2d at 999 (Flaherty and Hutchinson, JJ. concurring).

A majority of the Court did agree that each parent's support obligation should be determined based upon the

reasonable needs of the children and the parent's reasonable expenses and earning capacities. The members of the Court differed over whether these criteria should be applied via a mathematical formula or whether we should trust in the judgment and discretion of our trial courts.

In interpreting *Melzer*, the Superior Court has adhered to a middle course. We have recognized the validity of the *Melzer* formula but at the same time we have remained aware of the majority's admonition that the formula should not be inflexibly applied. Therefore, we have required trial courts to calculate the *Melzer* formula but we have allowed them to adjust the resulting support obligation if deviation from the formula is warranted under the particular circumstances. *Riess v. Deluca*, 353 Pa.Super. 622, 625, 510 A.2d 1239 1241 (1986); *Reitmeyer v. Reitmeyer*, 355 Pa.Super. 318, 324–325, 513 A.2d 448, 452 (1986).

*Id.*

The *Melzer* court recognized the need to give similar treatment to similarly situated parties. It also acknowledged the importance of allowing trial courts to deal with each case in an individualized manner based upon an actual quantification of the reasonable needs of the parties and the parental standard of living. The *Melzer* formula ingeniously achieves all of these seemingly conflicting objectives. Persons in similar situations will have the same support obligation but that determination will be based upon an individual assessment and not upon broad "averages."

Subsequent to the *Melzer* decision, the Pennsylvania legislature authorized support guidelines in 23 Pa.C.S.A. § 4322, which states:

The courts of common pleas shall develop guidelines for child and spousal support so that persons similarly situated shall be treated similarly. The guidelines shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support. In determining the reasonable needs of the child or spouse seeking support and the ability of the

obligor to provide support, the guidelines shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention.

Section 4322 plainly endorses the *Melzer* approach. The terminology used is the same as in the caselaw as are the underlying policies. The statute directs the counties to calculate the reasonable needs of the children based upon parental income and assets. Thus, it requires an individualized determination. The legislation also requires that allowance be made for exceptional circumstances. These were the very concerns of the *Melzer* court.

The statute was enacted pursuant to a federal mandate arising from concern that similarly situated children were not being treated similarly. *See* U.S. Department of Health and Human Services, *Development of Guidelines for Establishing and Updating Child Support Orders,* 2–3 (1985). Only a formula like that employed in *Melzer* balances the twin goals of individualized determination and similar treatment. Guidelines based on a hypothetical "average" situation abrogate each of these policies. The parties are not afforded particularized treatment and they are similarly treated only as to those parties also grouped in their grid. Within that range, there will necessarily be great deviation from the average. Use of a fixed formula based upon individual needs sidesteps what will otherwise be an unavoidable dilemma.

■ As noted above, *Melzer* preceded enactment of § 4322. The legislature's use of statutory language similar to that used in a prior judicial decision is assumed to constitute legislative approval of that decision. *In re Lack's Estate,* 431 Pa. 251, 244 A.2d 677 (1968). Thus, the statute and the caselaw are harmonious.

■ As described above, *Melzer* adopted a flexible, individualized approach for support cases. Use of the formula forces trial judges to quantify the reasonable needs of the

parties involved. It also enables courts to deal with each case in an individualized manner. At the same time, the strictures of the formula insure that similarly situated persons will be treated similarly. This approach is known as "cost sharing." *See* Cassetty, *The Parental Child–Support Obligation* (1983). As defined by Cassetty: "The cost sharing approach begins with the assumption that there are rather fixed and measurable costs associated with raising a child and that once known, they can be apportioned in some way between a child's parents." *Id.* at 5. Usually, these formulas do not rely on a precise specification of the minimal amount necessary to support the child. Instead, they set an idealized figure based upon the income of the parents. *See* O'Donnell, *Smith v. Smith: No Magic Formula for Determining Child Support Payments of the Noncustodial Parent,* 18 Will.L.Rev. 353–67 (1982). This method is in contrast with the Income Sharing Approach whereby a specified percentage of parental income is set aside for the child. *See* U.S. Department of Health and Human Services, *Review of Literature and Statutory Provisions Relating to the Establishment and Updating of Child Support Awards,* 6–7 (1984). Similar to the approach of the *Melzer* court, both of these methods commonly eschew establishment of specified numerical amounts as to the child's needs. Because § 4322 adopted this principle, county guidelines to the contrary are presumptively invalid.

County guidelines which do not follow the *Melzer* formula may still be useful as a pre-trial aid for practitioners. It may give them a benchmark figure which can be used during negotiations. Because the figure will represent an "average" it should at least identify when a party is making an outrageous demand. However, the trial court is required to follow the edict of *Melzer* as explained in subsequent cases such as *DeWalt.* [2]

2. It has been suggested that the various County support guidelines should be held invalid because they have resulted in tremendous variation from county to county. We do not herein accept or reject this view. We do note that such is not the situation in this case.

■■■ In this case, the trial court made no attempt to calculate the *Melzer* formula. It relied instead on the County guidelines. This was error. If trial courts simply plug the parties' situation into a support grid, they ignore the requirements of *Melzer*. To insure that an actual dollar figure is determined as to the reasonable needs and expenses of the parents and children the calculated *Melzer* formula must be in the record. If the trial court wishes to deviate from the resulting amount it is free to do so if sufficient reasons are placed in the record.

Our decision today does not invalidate county guidelines. It does disapprove of their improper use. Failure to adhere to the flexible and individualized approach of *Melzer* is inconsistent with the policies statutorily mandated in § 4322. Individuals have a right to have their situation subjected to particularized scrutiny by a court. They should not be namelessly plugged into a chart based upon assumptions no one understands.

Based upon the foregoing, the order of the Court of Common Pleas of Snyder County is reversed and this case is remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Applying various county guidelines to the facts of this case, the resulting order would be:

| | |
|---|---|
| Philadelphia: | $60.50 |
| Chester: | $60.50 |
| Montgomery: | $63.50 |
| Northampton: | $55.50 |
| Lehigh: | $55.50 |
| Bucks: | $56.00 |
| Lancaster: | $55.20 |
| Berks: | $45.24 |

These are hardly evidence of a dramatic deviation from county to county. Half of the counties surveyed would reach the same result as did Snyder County. Though it may be possible to make a viable argument that the guidelines vary unacceptably in some situations, this is not the case to support such a claim.