416

609 A.2d 821

Suzanne M. WONDERS

v.

Steven L. WONDERS, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 13, 1990.

Filed Oct. 23, 1991.

John C. Howett, Jr., Harrisburg, for appellant.

Carol J. Lindsay, Carlisle, for appellee.

Before CIRILLO, President Judge, and JOHNSON and BROSKY, JJ.

PER CURIAM:

Affirmed.

CIRILLO, President Judge, concurring and dissenting:

I join in that portion of the Honorable Justin Johnson's decision which concludes that the trial court did not abuse its discretion when it included Steven L. Wonders' averaged bonuses in calculating his income available for support. Like my colleague, the Honorable John Brosky, I find that the *Melzer* issue is properly before this court. Judge Brosky and I, however, differ on the disposition of this issue. It is my opinion that the formula set forth in *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984), remains viable and is applicable to any support case which falls

within the limits of the recently enacted Uniform Support Guidelines. *See* Pa.R.C.P. 1910.1 *et seq.*

Husband argues that the trial court abused its discretion when, in fixing the instant support award, it did not apply the *Melzer* formula in addition to the recently enacted Uniform Support Guidelines. *See* Pa.R.C.P. 1910.1 *et seq.* It is readily apparent that the record does not contain a *Melzer* calculation. Nonetheless, wife argues that the Uniform Support Guidelines have superseded *Melzer*. Specifically, wife, relying upon Pennsylvania Rule of Civil Procedure 1910.16–3, claims that if the parents' income is $8,000.00 a month or less the trial court need not utilize the *Melzer* formula when arriving at an appropriate support award; rather, wife claims, the award should be based solely upon the Uniform Support Guidelines. Therefore, wife maintains that the trial court did not abuse its discretion when it fashioned the instant support award without performing a *Melzer* calculation.

Recently, this court has, on three occasions, remanded a support matter for a recalculation of the support award when the trial court has failed to perform an on-the-record *Melzer* calculation. *See Coffey v. Coffey*, 394 Pa.Super. 194, 575 A.2d 587 (1990); *Racciato v. Racciato*, 393 Pa.Super. 307, 574 A.2d 625 (1990); *Lesko v. Lesko*, 392 Pa.Super. 240, 572 A.2d 780 (1990). In *Coffey, Racciato* and *Lesko*, this court ordered the trial court to recalculate the support award by applying the Uniform Support Guidelines in harmony with the *Melzer* formula. *Coffey*, 394 Pa.Super. at 203, 575 A.2d at 591; *Racciato*, 393 Pa.Super. at 311, 574 A.2d at 627; *Lesko*, 392 Pa.Super. at 248, 572 A.2d at 785. Consequently, this court has implicitly stated that the Uniform Support Guidelines do not supersede *Melzer*, but are to be applied in conjunction with *Melzer* in arriving at an appropriate support award.

Even more recently, in *Marshall v. Marshall*, 404 Pa.Super. 628, 591 A.2d 1060 (1991),[1] this court was presented

---

1. *Marshall* was authored by the Honorable Patrick Tamilia, and the two remaining judges on the panel concurred in the result.

with the question of "whether *Melzer* must be applied separately or in conjunction with the guidelines or has been repealed by the statutory provisions, 23 P[a.C.]S. § 4322 and whether the *guidelines* supersede and, in effect, nullify *Melzer*." *Marshall*, 404 Pa.Super. at 634–35, 591 A.2d at 1064. In *Marshall*, the appellant argued that the trial court erred in not performing an on-the-record *Melzer* calculation and in relying exclusively upon the support guidelines to fashion an award of support. In an attempt to assign continuing validity to *Melzer* in light of the recently enacted support guidelines, the court in *Marshall* stated that neither *Melzer* nor the guidelines can be ignored when calculating an award of support. *Id.* 404 Pa.Super. at 639, 591 A.2d at 1066. Specifically, the court in *Marshall* stated:

> *Melzer* is not to be mechanically applied nor is it superseded by the support guidelines. Rather, it [*Melzer*] becomes a standard against which the guideline application in a particular case can be tested. This does not mean that the court must run a *Melzer* formula and a guideline application in every case. Rather, it means the court may apply the guidelines, but if one of the parties proposes a *Melzer* calculation that seriously conflicts with the guidelines, the court must be able to explain the difference. *Melzer* and the guidelines remain viable.... It also means that if the court utilized neither the guidelines nor the *Melzer* formula, and the resulting support Order does not come within a reasonable degree of conformity with a *Melzer* calculation, it will be reversed and remanded.

*Id.* 404 Pa.Super. at 640, 591 A.2d at 1066. The court in *Marshall* advocates a middle ground by finding that if it is contended that the guideline figure failed to produce a result which is within the reasonable range of what a *Melzer* calculation would have produced, then the guidelines alone will not prevail. *Id.* 404 Pa.Super. at 639, 591 A.2d 1060. *Marshall* also states that if no objection is made to the relevance of *Melzer* at trial, or upon review, then it is presumed that any claim concerning the applicability of

*Melzer* is waived and the guideline amount will be tested against the internal standard as set forth by the guidelines. *Id.* 404 Pa.Super. at 640, 591 A.2d 1060. In effect, *Marshall* attempts to reduce *Melzer,* our supreme court's most comprehensive pronouncement on support law, to a measuring stick that may or may not be utilized.

Judge Brosky believes that the guidelines are a "tacit rejection of the current process," and an implicit rejection of the need to perform a *Melzer* calculation. Moreover, Judge Brosky reasons that this conclusion is buttressed by the fact that the guidelines were drafted to expedite support hearings without court involvement.

Although Judge Brosky's view offers a more definitive answer to the instant dilemma than *Marshall,* I, nonetheless, must disagree. After a studied review of the support guidelines, the statute which authorized their enactment, and the *Melzer* opinion, I conclude that the guidelines are to be applied in harmony with, and not in substitution of, *Melzer.*

In *Melzer,* our supreme court set forth guidelines for the calculation of child support awards. *Melzer,* 505 Pa. at 472–475, 480 A.2d at 996. *See Ryan v. Delong,* 371 Pa.Super. 248, 538 A.2d 1 (1987). As we have stated numerous times, *Melzer* eschewed strict mechanical formulas and endorsed a flexible approach to the determination of child support. *Melzer,* 505 Pa. at 477–478, 480 A.2d at 999 (Flaherty and Hutchinson, JJ, concurring); *Ryan,* 371 Pa.Super. at 251, 538 A.2d at 2.

> The *Melzer* court recognized the need to give similar treatment to similarly situated parties. It also acknowledged the importance of an individualized manner based upon an actual quantification of the reasonable needs of the parties and the parental standard of living. The *Melzer* formula ingeniously achieves all of these seemingly conflicting objectives.

*Ryan,* 371 Pa.Super. at 252, 538 A.2d at 3. Pursuant to *Melzer,* this court has required trial courts to calculate the *Melzer* formula on the record. However, we have permit-

ted the trial court to adjust the resulting support award if deviation from the formula is justified under the circumstances. *Ryan,* 371 Pa.Super. at 252, 538 A.2d at 2 (quoting *Dewalt v. Dewalt,* 365 Pa.Super. 280, 285, 529 A.2d 508, 511 (1987)). As such, we have attempted to heed the supreme court's admonition that the *Melzer* formula should not be mechanically applied. *Ryan,* 371 Pa.Super. at 252, 538 A.2d at 2.

Following *Melzer,* our legislature authorized the enactment of support guidelines by the courts of common pleas. *See* 23 Pa.C.S. § 4322 [2]. This statute was enacted in response to a federal mandate arising from the concern that similarly situated children were not being treated similarly. *See* U.S. Department of Health and Human Services, *Development of Guidelines For Establishing and Updating Child Support Orders,* 2–3 (1985); *Ryan, supra.* The former section 4322, which directed the counties to calculate the reasonable needs of the children based upon parental income and assets while allowing for deviations when faced with exceptional circumstances, clearly embodied the concerns of *Melzer. Ryan,* 371 Pa.Super. at 253, 538 A.2d at 3. It is well settled that "[t]he legislature's use of statutory language similar to that used in a prior judicial decision is assumed to constitute legislature approval of that decision." *Id. See In re Lock's Estate,* 431 Pa. 251, 244 A.2d 677 (1968). Former section 4322 and the case law, particularly *Melzer,* were harmonious. *Ryan, supra. See Szillery v. Wheaton,* 382 Pa.Super. 394, 400, 555 A.2d 237, 240 (1989) ("Although Section 4322 was promulgated in response to

2.    The courts of common pleas shall develop guidelines for child and spousal support so that persons similarly situated shall be treated similarly. The guidelines shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support. In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, the guidelines shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention.
  23 Pa.C.S. § 4322 (amended effective January 1, 1990).

our Supreme Court's decision in *Melzer*, Section 4322 has not super[s]eded *Melzer*"). Consequently, I do not believe that the legislature intended that the guidelines supersede *Melzer*.

Recently, section 4322 was amended:

(a) Statewide guideline.—Child and spousal support shall be awarded pursuant to a Statewide guideline as established by general rule by the Supreme Court, so that persons similarly situated shall be treated similarly. The guidelines shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support. In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, the guideline shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention. The guideline so developed shall be reviewed at least once every four years.

(b) Rebuttable presumption—There shall be a rebuttable presumption, in any judicial or expedited process, that the amount of the award which would result from the application of such guideline is the correct amount of support to be awarded. A written finding or specific finding on the record that the application of the guideline would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption in that case, provided that the finding is based upon criteria established by the Supreme Court by general rule within one year of the effective date of this act.[3]

23 Pa.C.S. § 4322 (emphasis added). When comparing section 4322(a) with its predecessor, it is evident that the policies underlying the enactment of the guidelines have remained constant. Specifically, other than authorizing the supreme court to establish the support guidelines and re-

---

**3.** The underlined portions represent the changes that were effected pursuant to the December 20, 1989 amendment.

*

quiring the guidelines to be reviewed every four years, this section has remained substantially the same. *See* footnote 1, *supra.* Clearly, section 4322(a) continues to embody the concerns of *Melzer;* it merely adds that the supreme court, not the individual counties, will have the responsibility of addressing those concerns through the enactment of support guidelines. *See Ryan, supra.*

Section 4322(b) was also added by the December 20, 1989 amendments. It provides that there shall be a rebuttable presumption that an award entered pursuant to the support guidelines is the correct amount of support to be awarded. 23 Pa.C.S. § 4322(b). While section 4322(b) now assigns a rebuttable presumption to a support award calculated pursuant to the support guidelines, it does not explicitly or implicitly state that *Melzer* is to be disregarded.

A reading of the comments to the support guidelines reveals that the guidelines are based upon the Income Shares Model developed by the Child Support Guidelines Project of the National Center for State Courts. Pa.R.C.P. 1910.16–1, explanatory comment. The Income Shares Model is premised on the concept that the child should receive the same proportion of parental income that he or she would have received if the parents had remained together. *Id.* Therefore, although we recognize that the guidelines allow for deviation from the grids or formulas and require the hearing officer or court to consider other relevant factors, *see* Pa.R.C.P. 1910.16–5(a), a support award entered solely on the basis of the guidelines would be determined primarily by the parents' income. *Melzer*, on the other hand, requires that support determinations be based upon a formula which specifically considers the reasonable needs of the children as well as the respective parties' income available for support. *Melzer, supra.* As such, *Melzer* requires an individualized determination, not a support award based upon grids or formulas. *Ryan*, 371 Pa.Super. at 253, 538 A.2d at 3.

Essentially, wife argues, and Judge Brosky concurs, that the goal of the support guidelines, similar treatment for

similarly situated persons, differs from *Melzer*'s individualized approach to support awards and that therefore *Melzer* has, in effect, been abandoned. Judge Brosky states that *Melzer* and the guidelines advocate differing approaches to determining support awards which cannot be harmonized, and also opines that it is difficult to imagine how the process of determining support awards can be simplified if the guidelines are to be used in conjunction with *Melzer*. Although simplicity is a concern, fairness and justice must be our goal. Moreover, the courts of this Commonwealth had, with varied success, applied the now-replaced county guidelines along with *Melzer* when determining support awards. In the absence of *Melzer* calculations, this court has remanded cases to the trial court to place the *Melzer* formula on the record. More importantly, the guidelines are just that, guidelines; they, by their very nature, cannot be binding. *Marshall, supra.* As such, they are merely a starting point for the calculation of a support award. *See* Pa.R.C.P. 1910.16–5(a). The guideline support award must then be harmonized with the *Melzer* formula to arrive at an appropriate award of support which is reflective of the individual needs of the parties involved. While the guidelines require that the court *consider* other relevant factors, Pa.R.C.P. 1910.16–5(a), the *Melzer* formula *guarantees* that an individualized support award will be entered which will reflect the parties' particular needs. Thus, I would advocate that the guidelines be utilized as a starting point and that thereafter the *Melzer* formula be calculated to arrive at an individualized support determination. *Cf. Marshall, supra.* After this figure is reached, any necessary adjustments can be made. *See Ryan, supra.* The figure reached after application of the *Melzer* formula, with adjustments if warranted, would be, in my opinion, the correct amount of support, regardless of what the support award would have been under the guidelines.

I therefore find that the support guidelines' goal of similar treatment for similarly situated individuals must be harmonized with *Melzer*'s mandate that each support deter-

mination be based upon a considered evaluation of the reasonable needs of the children and the parents' reasonable expenses and earning capacities. *Melzer, supra; DeWalt, supra.* This approach strikes a proper balance between the twin goals of similar treatment and particularized support determinations. *Ryan,* 371 Pa.Super. at 253, 538 A.2d at 3. Moreover, I perceive these goals to be complementary, not contradictory.

The Commonwealth of Pennsylvania is fortunate to boast a diverse population. Consequently, the families of this state necessarily reflect this rich diversity. When these families are intact, the courts and the legislature, absent abuse, are powerless to interfere in the way two parents decide to raise their children. When a family is no longer intact, the state enters the parties' lives to ensure that children are not unjustly deprived of opportunities they would have had if the family had remained intact. *See Pharoah v. Lapes,* 391 Pa.Super. 585, 599, 571 A.2d 1070, 1078 (1990) (Cirillo, P.J., dissenting). While the guidelines advance the goal of similar treatment, we would be foolhardy to assume that any objective formula or grid could reflect the manner in which two parents will choose to rear their children. *See* O'Donnell, *Smith v. Smith: No Magic Formula for Determining Child Support Payments of the Noncustodial Parent,* 18 Will.L.Rev. 353, 363 (1982). A parent's standard of living is influenced by, among other things, religious and moral convictions, educational and cultural backgrounds, in addition to his or her level of income. *Id.* Consequently, we may, in the interests of uniformity and efficiency, utilize formulas and grids, but we cannot ignore the inherent subjectivity of support determinations. *See id.*

Unlike my colleague, I am not convinced that the guidelines' alleged tacit rejection and implicit disapproval of *Melzer* is enough to conclude that *Melzer,* the seminal authority in support cases, has been superseded. On the contrary, I feel that because the guidelines do not explicitly state that *Melzer* has been superseded, the *Melzer* formula

remains viable. In sum, in the absence of further guidance from our supreme court or a specific directive from our legislature, I am constrained to conclude that because section 4322 continues to embody the concerns of *Melzer*, the support guidelines are to be read in harmony with *Melzer*.

Having determined that the support guidelines have not superseded *Melzer*, I would also decide that because husband did not withhold information from the trial court or provide inaccurate information, the trial court abused its discretion in not including a *Melzer* calculation in the record. *See Racciato*, 393 Pa.Super. at 309, 574 A.2d at 626 ("The calculated Melzer formula must be in the record to insure that an actual dollar figure is determined as to the reasonable needs and expenses of the parents and the children").

Husband also argues that the trial court abused its discretion by entering a support order which did not allow him to meet his basic needs. Since I would conclude that the trial court abused its discretion when it did not apply the *Melzer* formula in conjunction with the support guidelines, I cannot determine if, considering the children's needs and husband's ability to pay, the support award is confiscatory. Consequently, I would not address this issue and would vacate the award of the trial court and remand the matter for a recalculation of husband's support obligation.

BROSKY, Judge, concurring.

I agree with the result reached by the majority and, to that extent, concur generally with the majority memorandum. However, I cannot agree with the majority that appellant's third issue has been waived.

Appellant alleges that it was error on the part of the trial court to omit a *Melzer* calculation in the computation of support. The majority finds this challenge waived due to a failure to raise it in an answer to a request for a hearing de novo. However, a hearing de novo is, in essence, a brand new proceeding. Although it may be a wise practice to alert the court of matters that the parties felt were incor-

rectly done in the underlying proceeding, there is apparently no requirement that one do so. In *D'Arciprete v. D'Arciprete*, 323 Pa.Super. 430, 470 A.2d 995 (1984), we rejected a party's argument that the court erred in a de novo hearing in considering the other party's argument because no exceptions had been taken. We stated that de novo review means "full consideration of the case anew." The de novo hearing is regarded as a brand new proceeding. Consequently, I cannot agree that appellant's challenge was waived for failing to raise it in an answer to appellee's request for a de novo hearing.

Turning to appellant's third issue, appellant argues that it was an abuse of discretion to exclude a *Melzer* [1] calculation in determining child support. Appellant argues that despite the court's application of the statewide support guidelines, there remained a necessity that a *Melzer* calculation also be conducted. I cannot agree. Rather, I believe that a *Melzer* calculation is no longer necessary when the statewide guidelines are applicable. I base this statement upon the fact that there are several indications that the legislature and Supreme Court have either rejected or abandoned the *Melzer* approach for the majority of cases where the joint monthly net income is under $8,000.

The statewide support guidelines allow for a relatively quick determination of an individual's presumptive support obligation taking into consideration the respective earnings of both parents. It presumptively arrives at a figure which allows for the reasonable needs of the child or children consistent with the abilities of the parents to provide support. In short, it provides a convenient and uniform process to arrive at a figure for support taking into consideration all relevant factors consistent with the Commonwealth's support policies. In this respect, it accomplishes essentially the same thing that the *Melzer* formula purports to do. However, to the extent that the statewide support guidelines properly advance the support policies of the Commonwealth, the utility of making dual calculations of

1. *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984).

support, one under the guidelines and one under *Melzer*, is greatly diminished. That is, in the best case scenario the two methods would provide approximately the same support obligation. In the worst case scenario the two methods would provide disparate figures, in which case a second dilemma would surface. Presented with two conflicting numbers the parties would be forced to argue which is the more reasonable and the courts will be forced to choose between the competing figures or engage in a process of compromise.

There are several strong logical suggestions that the legislature's initiation of the statewide support guidelines represents either an abandonment or rejection of the *Melzer* approach. It appears indisputable that one of the goals meant to be accomplished by passage of the guidelines is the expedition of support claims. The explanatory comments to the guidelines assert that some of the benefits to be derived from implementation of the guidelines are "resolution of support issues without court involvement" and "support hearings in which the factual and legal issues are more clearly defined." By implying this much, a preference is being stated that the guidelines be used instead of the current process, i.e. *Melzer*. In contrast, it is difficult to imagine how the process can be simplified or complications minimized if the guidelines are to be used in conjunction with *Melzer*.

Additional indicia of the legislature's intent can be found in the recognition that the statewide guidelines were, to a degree, passed upon the initiative of federal legislation which implicitly finds the same difficulty with support processes throughout the country. Under the Child Support Enforcement Amendments of 1984, P.L. 98–378 and 45 CFR 302.56, states are required to develop guidelines for setting amounts of child support awards. The advisory panel servicing this federal legislation indicated that guidelines can materially improve the adequacy of orders, enhance consistent and equitable treatment of litigants and *facilitate*

*more efficient adjudication of cases.*[2] Thus, the legislature's initiation of a process, the guidelines, which is rather explicitly grounded upon a dissatisfaction with the present process of support litigation is, in itself, a form of tacit rejection of the current process. But this tacit rejection does not end at this point, there is further evidence of implicit rejection of the individualized approach to determining support obligations, i.e., *Melzer.*

The statewide guidelines, as adopted, utilize the Income Shares Model developed by the Child Support Guidelines Project of the National Center for State Courts. As stated in the explanatory comment, "[t]hat Model is predicated on the concept that the child should receive the same proportion of parental income that he or she would have received if the parents lived together." Although both *Melzer* and the statewide guidelines have as their objective the provision of an appropriate amount of child support, their approach to reaching the applicable figure is bi-polar. *Melzer* represents an individualized approach focused first on established needs. The guidelines are a more generalized approach which focuses on available income first. The philosophical approaches to reaching the support figure are not truly capable of harmonizing. Therefore, I believe, the adoption of this income shares approach, coupled with the legislature's indication that emphasis be placed on the net incomes of the parties, represents an implicit rejection of the so-called reasonable needs approach that *Melzer* supposedly represents in favor of the income shares/proportionate income approach incorporated in the guidelines. Indeed, section 4322 states support "shall be awarded pursuant to a statewide guideline ... so that persons similarly situated shall be treated similarly." Clearly this is a stated preference against the individualized approach which *Melzer* provides. Furthermore, the usage of the word "shall" seems to leave little room for discretionary application. Rather, application of the guidelines appears quite mandatory.

2. See, *Development of Guidelines for Child Support Orders,* Final Report, March 1987, Robert G. Williams, Ph.D., p. I–6.

There is further evidence of an intent to have the guidelines control the support determination at Rule 1910.16–5(d), where it is stated "[t]he guidelines contain two stated limitations based upon monthly net income. First, The Chart of Proportionate Expenditures ... states percentages up to a joint monthly net income of $8,000 only. Consequently, if the parties joint monthly net income exceeds this amount, the case is outside the guidelines and the amount of support is to be determined pursuant to existing case law." This comment strongly suggests that to the extent the monthly net income is $8,000 or less, the amount of support shall be determined by application of the guidelines and that the guidelines will apply instead of the existing caselaw, i.e., *Melzer*.

I also believe that the Supreme Court's choice not to perpetuate the *Melzer* formula in the guidelines presents evidence that a dual calculation is unnecessary. The guidelines, as they appear in the rules of civil procedure, were drafted by the Supreme Court with full knowledge of the *Melzer* case. Even though the Supreme Court was setting forth a rather divergent approach to establishing a support obligation and using mandatory language such as "shall," they did not indicate, in the guidelines, that a *Melzer* calculation should also be conducted. The Court's failure to indicate a need for conducting a *Melzer* review along with a guidelines determination, is itself strong evidence that the Supreme Court does not believe that a *Melzer* calculation is necessary when the guidelines are utilized.

For the above reasons I believe that there has been established a clear preference and policy that support determinations be governed by the guidelines, and the guidelines only, at least when the income of the parties falls within the $8,000 monthly income limitation set forth in the rules. When the available income is outside this limitation the courts shall utilize the existing caselaw to determine a proper support obligation. Although this theory rests soundly upon the above outlined rationale, I believe the above dissertation would be incomplete if I did not address

some of the commonly asserted concerns relating to guideline determinations of support.

Critics of guidelines assert them to be too formulated and inflexible to be relied upon to serve an area as important and sensitive as child support. However, I believe these fears are mostly unfounded and unjustified. By definition, the guidelines in consideration here provide a *presumptive* support obligation which can be rebutted and adjusted. Thus, there remains enough flexibility within the process to fashion an appropriate support obligation depending on the particular circumstances of a given case.

It is indisputable that the guidelines allow for deviation from the figure derived from an application of the grid and requires consideration of other factors. Yet critics seem troubled that if the grid figure is utilized then the support obligation would be determined primarily by the parties income. Despite intimating a philosophical problem with this approach it has never been explained, to my satisfaction, what is so inherently evil or unacceptable about such an approach.

True, *Melzer* incorporates a specific finding of the child's reasonable needs. However, the guidelines, by definition, also incorporate a finding of the child's reasonable needs, albeit a more statistical and generalized finding than under *Melzer*. By allowing for deviation upon a proper showing, any necessary deviation can be attainable if the parties income allows it. I believe the interests of support litigation can be advanced by clarifying the role of state guidelines and emphasizing the fact that they allow deviation for the circumstances of the particular case.

For the within reasons, I agree that the support order must be affirmed.