470

605 A.2d 819

Nancy P. **STANTON**

v.

**Jon PETERSEN, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 22, 1991.

Filed March 23, 1992.

Bernard J. Hessley, Warren, for appellant.

John A. Aranyos, Asst. Public Defender, Warren, for appellee.

CIRILLO, Judge.

This is an appeal from a support order entered in the Court of Common Pleas of Warren County. We reverse.

In 1983, appellant Jon Petersen was ordered to pay $55.00 per week for the combined support of his two minor children. Appellee Nancy P. Stanton, the mother and custodian of the children, filed a petition for modification. The trial court, by order dated May 8, 1989, continued support in the amount of $55.00 per week. Stanton filed a second petition for modification on September 13, 1990. Following a hearing, the master recommended a support order in the amount of $105.00 per week. Petersen filed timely exceptions to the master's recommendation. The Honorable Robert L. Wolfe, after hearing argument on the exceptions, entered a support order in the amount of $105.28 per week. Judge Wolfe entered judgment on that order on May 6, 1991. This appeal followed. Petersen raises three issues for our review:

(1) Does an arithmetic average of the support guideline amount for child support determined in accord with *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984) constitute a required consideration of both the guidelines and the *Melzer* formula?

(2) Does a 91% increase in the child support, which requires the respondent father to pay 87–½% of the total needs of the children, constitute an excessive, unfair and confiscatory order where there is no showing of a substantial and material change in the financial situation of the parties?

(3) Did the trial court properly determine the father's net monthly income?

Prior to the enactment of the statewide Uniform Support Guidelines, 23 Pa.C.S.A. § 4322, Pa.R.C.P. No. 1910.16–2, 42 Pa.C.S.A., the trial courts had as their only guide in determining support obligations the formula announced in *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984). In *Melzer*, the supreme court held that the hearing court must determine the reasonable needs of the child and the parents' respective abilities to support the child, allowing for the parents' reasonable expenses in the determination of the latter figure. Each parent, Parent A and Parent B, is responsible for support of the child. The *Melzer* formula utilizes Parent A's income available as support as the numerator, and Parent A's income available for support plus Parent B's income available for support as the denominator, and multiplies that figure by the amount determined to be the reasonable needs of the child. The product of these two factors is Parent A's support obligation. Parent B's support obligation is determined in the same manner, utilizing Parent B's income available as support as the numerator in the formula. 505 Pa. at 472–73, 480 A.2d at 996.

Pursuant to *Melzer*, this court has required trial courts to calculate the *Melzer* formula on the record. However, we have permitted the trial court to adjust the resulting support award if deviation from the formula is justified under

the circumstances. *Ryan v. DeLong,* 371 Pa.Super. 248, 252, 538 A.2d 1, 2 (1987) (quoting *Dewalt v. Dewalt,* 365 Pa.Super. 280, 285, 529 A.2d 508, 511 (1987)); *cf. Seawalt v. Muldoon,* 406 Pa.Super. 94, 593 A.2d 886 (1991); *Marshall v. Marshall,* 404 Pa.Super. 628, 591 A.2d 1060 (1991). As this court has stated numerous times, *Melzer* eschewed a strict mechanical formula and endorsed a flexible approach in determining the support award. *Melzer,* 505 Pa. at 477–478, 480 A.2d at 999 (Flaherty and Hutchinson, JJ., concurring).

■ Petersen's first claim on appeal presumes that the hearing court is required to consider both the guidelines and the *Melzer* formula. This presumption is correct. The enactment of the statewide guidelines has not rendered the *Melzer* formula obsolete. Recently, this court has remanded support matters for recalculation of the support award when the trial court failed to perform an on-the-record *Melzer* calculation. *See Coffey v. Coffey,* 394 Pa.Super. 194, 575 A.2d 587 (1990); *Racciato v. Racciato,* 393 Pa.Super. 307, 574 A.2d 625 (1990); *Lesko v. Lesko,* 392 Pa.Super. 240, 572 A.2d 780 (1990). In each of these cases, this court remanded to the trial court to recalculate the support award by applying the Uniform Support Guidelines, Pa.R.C.P. 1910.16–2, in harmony with the formula set forth in *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984). *Coffey,* 394 Pa.Super. at 202, 575 A.2d at 591; *Racciato,* 393 Pa.Super. at 311, 574 A.2d at 627; *Lesko,* 392 Pa.Super. at 248, 572 A.2d at 785. *Cf. Wonders v. Wonders* (filed October 23, 1991) (Cirillo, P.J., Concurring and Dissenting). Consequently, this court has implicitly stated that the Uniform Support Guidelines do not supersede *Melzer,* but are to be applied in conjunction with *Melzer* in arriving at an appropriate support award. *Wonders, supra* (Cirillo, P.J., Concurring and Dissenting).

Following the supreme court's decision in *Melzer,* our legislature authorized the enactment of support guidelines by the courts of common pleas. *See* 23 Pa.C.S.A. § 4322. This statute was enacted in response to a federal mandate

arising from the concern that similarly situated children were not being similarly treated. *See* U.S. Department of Health and Human Services, Development of Guidelines for Establishing and Updating Child Support Orders, 2–3 (1985); *Ryan, supra.* The former section 4322, which directed the counties to calculate the reasonable needs of the children based upon parental income and assets, while allowing for deviations when faced with exceptional circumstances, clearly embodied the concerns of *Melzer. See Ryan,* 371 Pa.Super. at 253, 538 A.2d at 3; *Wonders, supra.*

It is well settled that "[t]he legislature's use of statutory language similar to that used in a prior judicial decision is assumed to constitute legislative approval of that decision." *Ryan,* 371 Pa.Super. at 253, 538 A.2d at 3. *See In re Lock's Estate,* 431 Pa. 251, 244 A.2d 677 (1968). Former section 4322 and the case law, particularly *Melzer,* were harmonious. *Ryan, supra. See Szillery v. Wheaton,* 382 Pa.Super. 394, 399, 555 A.2d 237, 240 (1989) ("Although Section 4322 was promulgated in response to our Supreme Court's decision in *Melzer,* Section 4322 has not super[s]eded *Melzer* "). Section 4322 was amended December 20, 1989, effective January 1, 1990. A review and comparison of section 4322 and its predecessor evinces a consistency in the policies underlying the enactment of the guidelines. Other than authorizing the supreme court to establish the support guidelines and requiring review of the guidelines every four years, this section has remained substantially the same. *Wonders, supra.*

In addition to the above considerations, there are several other factors which support our determination that *Melzer* and the guidelines must be utilized harmoniously. In particular, Pennsylvania Rule of Civil Procedure 1910.16–5, pertaining to the operation of the support guidelines, recognizes that an appropriate support award cannot be determined simply by perfunctory application of objective data onto a grid. The rule, entitled "Applicability of the Support Guidelines," states:

*The support guidelines are a starting point only.* They must be applied taking into consideration the special needs and obligations of the parties. The hearing officer, permanent hearing officer or the court *must consider all relevant factors, including the following:*

(1) unusual needs and unusual fixed obligations;

(2) other support obligations of the parties;

(3) other income in the household;

(4) ages of the children;

(5) assets of the parties;

(6) medical expenses not covered by insurance;

(7) other relevant and appropriate factors.

Pa.R.C.P. 1910.16–5(a) (emphasis added). In our opinion, this rule mandates, in addition to a guideline amount, an individualized determination of support. The clear statement regarding the applicability and operation of the support guidelines mirrors the underlying policies and concerns of the *Melzer* court, and precludes any appreciable diffusion of the *Melzer* formula. *See Ryan, supra; see also Shutter v. Reilly,* 372 Pa.Super. 251, 539 A.2d 424 (1988). This rule endorses the *Melzer* approach.

Moreover, Pennsylvania Rule of Civil Procedure 1910.16–1 provides in pertinent part:

*The amount of support to be awarded ... shall be determined in accordance with the support guidelines* which consist of the guidelines expressed as grids set forth in Rule 1910.16–2 and as a formula in Rule 1910.16–3 *and the operation of the guidelines set forth in Rule 1910.16–5.*

Pa.R.C.P. 1910.16–1(a) (emphasis added). Clearly, a reference to the "guidelines" generically refers to the grids or the formulaic expression of the grids set forth in Pa.R.C.P. 1910.16–3.[1] A simple application of the grids or the formula, however, ignores the mandates of Rule 1910.16–1(a) and

---

1. It should be noted that irrespective of what approach the trial court utilizes, whether it be the Rule 1910.16–3 formula or the Rule 1910.16–2 grids, the resulting amount of the support award is the same. *See* Pa.R.C.P. 1910.16–1—Explanatory Comment.

Rule 1910.16–5. Likewise, the comment to Rule 1910.16–1 states that "failure to deviate from these guidelines ... where there are special needs and special circumstances constitutes a misapplication of the guidelines." Pa.R.C.P. 1910.16–1—explanatory comment.

For the guidelines to operate in the manner in which they are designed, recognition must be given as required by the statute to

(a) unusual or special needs of the parties and their children;

(b) extraordinary expenses such as those necessary to meet unusual and unavoidable obligations; and

(c) other factors "as warrant special attention" such as third party contributions, separate property and other circumstances that increase or decrease a party's ability to pay support.

*Id.* It follows, therefore, that the amount of support to be awarded shall be determined by reference to both the guidelines (grid or formula) and the *Melzer* formula as expressed in Pa.R.C.P. 1910.16–5.

In sum, the guidelines have refined the *Melzer* formula, and have attempted to prepare the calculation, in the form of grids, for the ease and benefit of the litigants and the hearing courts. *See* Pa.R.C.P. 1910.16–2, 42 Pa.C.S.A. Neither approach is purely the law; both must be considered as guides in determining the parents' respective support obligations. *Melzer* requires the hearing court to indicate on the record what figures are inserted into the grids, how the court arrived at these figures, and the reasons for any deviation in the formula or guidelines determination.

As stated in *Wonders, supra,* while the guidelines advance the goal of similar treatment, we would be foolhardy to assume that any objective formula or grid could reflect the manner in which two parents will choose to rear their children. *See* O'Donnell, *Smith v. Smith: No Magic Formula for Determining Child Support Payments of the Noncustodial Parent,* 18 Willamette L.Rev. 353, 363 (1982). Countless variables may contribute to deviations; the cir-

cumstances of each mother/father/child(ren) unit must be considered and, for purposes of our review, stated on the record. Children from second marriages in need of support, disabilities, special educational or health requirements, just to name a few, are financial concerns which are not figured into the grids.

Accordingly, we agree with Peterson's argument that the trial court must utilize the guidelines as a starting point, Pa.R.C.P. 1910.16–5(a), as well as the *Melzer* formula in order to calculate an individualized support determination. The figure reached after application of the *Melzer* formula, *as embodied in Pa.R.C.P. 1910.16–5*, with adjustments if warranted, would be the correct amount of support, regardless of the grid point award under the guidelines. With this in mind, we must determine whether the trial court's "arithmetic average" of the guideline figure and *Melzer* determination was appropriate in this case.

Our scope of review in an appeal from an order of support is extremely narrow. We are limited to determining whether an abuse of discretion, as shown by clear and convincing evidence, has occurred. *Steinmetz v. Steinmetz*, 381 Pa.Super. 440, 443, 554 A.2d 83, 85 (1989). "An abuse of discretion is more than an error of judgment. It must be a misapplication of the law or an unreasonable exercise of judgment." *Marshall v. Ross*, 373 Pa.Super. 235, 238, 540 A.2d 954, 956 (1988).

Here, the trial court made the following determinations:

| | | |
|---|---|---|
| Peterson's income: | $1,884.00 | per month |
| | $ 438.00 | per week |
| Stanton's earning capacity: | $ 660.00 | per month |
| | $ 153.00 | per week |
| Reasonable Needs of the Children: | $1,414.00 | per month |
| | $ 328.83 | per week |

The trial court's application of the *Melzer* formula yielded a total support obligation for Petersen in the amount of $88.93 per week; application of the support guidelines yielded a figure of $121.63 per week. The trial court averaged

478

the two figures, resulting in a support determination of $105.28 per week.

We note the confusion up to now on the legal issue of whether the state support guidelines have supplanted the *Melzer* formula. The trial judge noted his own uncertainty, which may have led him to the the conclusion that splitting the difference would result in a fair resolution. We do not, however, approve of this approach. Although we find no error in the court's mathematical calculations, a simple average of the guideline figure and the *Melzer* figure is a misapplication of the law. *Marshall v. Ross, supra.* We note, too, that the trial court's introduction of a third step in the calculation of a child support award is neither factually nor legally justified on the record before us. Our endorsement of this "averaging" approach would only serve to aggravate the prevailing confusion in this area of the law.

▮ Contrary to Pa.R.C.P. 1910.16–4(b), the trial court's determination of Petersen's support obligation is greater than a ten percent deviation from the guideline amount, and the deviation has not been explained on the record.[2] Subsection 4(a) allows for an unexplained deviation of ten percent from the guideline support award; the court's determination of a support obligation may be either ten percent greater than or ten percent less than the guideline amount, and the hearing officer or trial court need not explain the deviation. Subsection (b), however, states that a deviation of greater than ten percent above or below the guideline amount must be explained and justified. Pa. R.C.P. 1910.16–4(b). Furthermore, the guidelines provide

2. As provided above, the trial court determined that Petersen's support obligation pursuant to the *Melzer* formula was $88.93 per week, and, pursuant to the guidelines, $121.63 per week. The average of these two figures, $105.28, is greater than ten percent *below* the guideline figure. The court without explanation could have determined Petersen's support obligation to be $109.47 per week, one standard deviation below the guideline amount. *See* Pa.R.C.P. 1910.16–4(a); 1910.-16–5. In a pecuniary manner of speaking, the court has erred in Petersen's favor. However, parents are obligated to support their children to the extent of their financial abilities to do so. *Commonwealth ex rel. Barbara M. v. Joseph M.,* 286 Pa.Super. 51, 428 A.2d 567 (1981).

that a support determination which is greater than one standard deviation above or below the guideline amount must be explained by the hearing officer or trial court. *See* Pa.R.C.P. 1910.16–5(a). *Cf. Lampa v. Lampa,* 371 Pa.Super. 1, 537 A.2d 350 (1988) (trial court is required to explain substantial deviation of award from county child support guidelines and *Melzer* formula).

Acknowledging that the guidelines are *a starting point only,* the hearing court is nonetheless required to provide an explanation for certain deviations. Although the trial court properly considered both the *Melzer* formula and the guidelines, and attempted to harmonize the two figures, *see Marshall v. Marshall, supra,* the court deviated below the guideline figure beyond one standard deviation without explanation. This was error. We are unable to derive an explanation from the record, especially in light of the court's consideration of Petersen's $931.00 per month "cushion" after his own living expenses, which Petersen attributed in part to Stanton's contributions, and the court's consideration of the fact that Petersen has remarried, and consequently his household expenses have decreased by almost one half.[3] Without explanation, we are unable to determine whether the deviation was an abuse of discretion, and therefore we vacate and remand for reconsideration in light of these principles.

Petersen's second claim on appeal need not be addressed due to our decision to vacate and remand. In his final issue, Petersen contends that the trial court erred in determining his net income. Petersen does not dispute the figure of $1,884.00 per month, but instead argues that the court should have reduced that amount by 30% because the children spend approximately 111 days per year with him. Petersen has not referred this court to the record support for the claim that he spends 111 days per year with his children, *see* Pa.R.A.P. 2119(c), and we are unable to locate

3. Petersen acknowledged this point at the hearing before the master on November 14, 1990.

such support.   We conclude that this argument is merit-
less.[4]

Vacated and remanded.   Jurisdiction relinquished.

FORD ELLIOTT, J., concurs in the result.

BROSKY, J., files a concurring and dissenting opinion.

BROSKY, Judge, concurring and dissenting.

I concur with the majority's conclusion that the case
requires a remand for reconsideration of the support obli-
gation.   However, I am unable to join the major premise of
the opinion that indicates the necessity of considering the
*Melzer* formula.

In *Wonders v. Wonders* (1991), (discussed in the majority
opinion), I set forth my view that the implementation of the
statewide support guidelines made reference to *Melzer* un-
necessary and possibly counterproductive.   To paraphrase
that thesis, which will not be reiterated here in full, the
guidelines, by their wording, are mandatorily applicable to
the majority of cases before the hearing court.   Although
the major goal behind the guidelines and the *Melzer* formu-
la are the same, the arrival at a fair and adequate support
obligation, the methodology at arriving at this goal is bi-
polar, as are the philosophies behind the methodologies.   As
such, it is rather incongruous to suggest that the two
approaches be harmonized, because it is very likely that
they cannot.   I further set forth a variety of reasons that

4.   Petersen's argument is premised on his statement that the court did
not consider the direct contributions he makes for the support of his
children, such as medical expenses, gifts, eye glasses, contact lenses
and clothes.   We point out that Pennsylvania Rule of Civil Procedure
1910.16–5(*l*) states:
   The support guidelines contemplate that the non-custodial parent
   has regular contact, including vacation time, with his or her chil-
   dren, and that he or she makes direct expenditures on behalf of the
   children.   Thus, a non-custodial parent's support obligation should
   be reduced only if that parent spends an unusual amount of time
   with the children.
Pa.R.C.P. 1910.16–5(*l*).   The direct contributions, therefore, barring
exceptional circumstances, are factored into the support guideline
amount.

supported the premise that the new guidelines *were meant to be* the sole criteria for establishing support obligations when they were applicable to a particular case. Among those reasons was the fact that the guidelines, although established after the decision in *Melzer*, do not indicate that they are to be combined with caselaw established principles in determining a support obligation. For the reasons set forth in my concurring opinion in *Wonders* I did not believe then, nor do I believe now, that the guidelines were meant to be considered in conjunction with a *Melzer* calculation. Instead, I believe that the new guidelines supercede the *Melzer* approach.

In *Wonders,* considering the approach of consulting both the guidelines and *Melzer,* I wrote "[i]n the worst case scenario the two methods would provide disparate figures, in which case a second dilemma would surface. Presented with two conflicting numbers the parties would be forced to argue which is the more reasonable and the courts will be forced to choose between the competing figures or engage in a process of compromise." Concurring Opinion by Brosky, J., at p. 3. The present case illustrates this problem exactly. The sum reached through utilization of the guidelines is roughly 33% higher than the sum arrived at via the *Melzer* formula. One party is advocating adoption of the *Melzer* number, and the other party, the guidelines number. The court, trying to satisfy the cases that seem to suggest consideration of both is proper, gave equal deference to both, he averaged the two numbers. Now, upon appeal, the majority suggests that it was improper to average the two numbers. No one could blame the trial court if he felt exasperated or frustrated by a remand in this case. The cases from this court provide very little resolution or guidance on this matter. It was with an eye towards situations like the one this case presents that prompted me to argue in *Wonders* that the guidelines should be the sole guiding methodology for arriving at a support obligation. Upon examining this case that position presents even greater

appeal. I would remand for a determination of support through utilization of the guidelines only.